RECEIVED
IN MONROE, LA

SEP 2 4 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

**ROCKY H. CAIN**

**VERSUS**

**TRANSOCEAN OFFSHORE DEEP
WATER DRILLING, INC., ET AL.**

**CIVIL ACTION NO. 03-1372**

**JUDGE ROBERT G. JAMES**

**MAG. JUDGE KAREN L. HAYES**

## RULING

This case arises from Plaintiff Rocky H. Cain's ("Cain") injury aboard CAJUN EXPRESS,

a rig in the Gulf of Mexico. Plaintiff brought suit against his employer, Transocean Offshore USA

Inc., and its predecessor, Sedco Forex Corporation (collectively "Transocean"), under the Jones

Act, 46 U.S.C. § 688, and general maritime law. Transocean has also asserted a claim against

Third Party Defendant The Fontana Center based on additional injuries Cain allegedly sustained

while attending a required work hardening program.[1]

Pending before the Court is a Motion for Summary Judgment [Doc. No. 104] filed by

Transocean. For the following reasons, Transocean's Motion for Summary Judgment is

GRANTED.

## I. PROCEDURAL BACKGROUND

Transocean originally filed a Motion for Summary Judgment [Doc. No. 75] on March 21,

2005, arguing that Cain was not a Jones Act seaman at the time of his injury because the CAJUN

EXPRESS had not obtained vessel status. Transocean also argued that Cain could not rely on his

---

[1]Cain filed a separate state action against The Fontana Center.

prior employment with Transocean and its predecessor to confer seaman status.

Relying on a then-recent Supreme Court decision, *Stewart v. Dutra Constr. Co.*, 543 U.S. 481 (2005), on August 12, 2005, this Court found that the CAJUN EXPRESS met the definition of a vessel in navigation at the time of Cain's injury and denied Transocean's Motion for Summary Judgment. [Doc. Nos. 89 & 90]. However, the Court realized that its ruling was contrary to precedent of the United States Court of Appeals for the Fifth Circuit and contrary to a ruling by the Honorable Ivan Lemelle in a remarkably similar case, *Hyman v. Transocean Offshore Deepwater Drilling, Inc.* ("*Hyman*"), Civ. Action No. 03-2959, United States District Court, Eastern District of Louisiana. Accordingly, the Court certified for interlocutory appeal its denial of the Motion for Summary Judgment on the issue of the CAJUN EXPRESS's vessel status. [Doc. No. 92].

On February 21, 2008, a majority of the panel for the Fifth Circuit reversed this Court and held that *Stewart* did not modify precedent on "vessel status of incomplete watercraft." *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 303 (5th Cir. 2008). The Fifth Circuit further held that the CAJUN EXPRESS was not a vessel in navigation at the time of Cain's injury, and he was not a Jones Act seaman on this basis. *Id.*

However, the Fifth Circuit noted that the following issues had not been resolved by this Court and were not resolved by its opinion:

> We note that in the district court Cain argued that even if the CAJUN EXPRESS was not a vessel he was a Jones Act seaman based on his overall employment because he was a seaman before joining the CAJUN EXPRESS and his essential duties never changed. The district court did not reach this issue because it concluded that the CAJUN EXPRESS was a vessel. The parties have not briefed the issue to us, and we express no opinion on its merit. We merely note its existence and point out that it remains unresolved in the district court. Further, Cain's claims with respect to his alleged injuries at the Fontana Center are unresolved.

2

*Id.* at 303 n.2.

On remand, the Court held a telephone status conference with the parties. After discussion, the parties agreed to provide further briefing on Cain's contention that he is a Jones Act seaman based on his overall employment status.

On July 3, 2008, Transocean filed this second Motion for Summary Judgment [Doc. No. 104]. On July 21, 2008, Cain filed an opposition memorandum [Doc. No. 106]. On September 17, 2008, Transocean was granted leave to file a reply memorandum [Doc. No. 109]. Briefing is now complete.

## II. FACTS

In June 1996, Cain was hired as a driller by Sonat Offshore USA Inc., an independent corporation, which was later acquired by a corporate parent of Transocean Offshore USA, Inc. He was assigned to the rig AMIRANTE. Although his job assignment later changed to toolpusher, he continued to work aboard the AMIRANTE until March 1, 2000. It is undisputed that Cain was a Jones Act seaman while assigned to the AMIRANTE.

On March 1, 2000, Cain was assigned to work as a toolpusher at the "Cajun Construction Site" in Singapore for construction of the CAJUN EXPRESS. Cain was part of the drilling crew, which had begun to arrive at the construction site in the first half of 1999.

Following the sea trials, the rig voyaged to the Gulf of Mexico, where it arrived in August 2000. It was moored off the coast of Grand Isle, Louisiana. [Exh. A, at 15, 26.] Cain continued to work as a toolpusher.

On September 10, 2000, Cain was working on the drill floor of the CAJUN EXPRESS. On that date, Cain left the drill floor to retrieve a part from the warehouse, a room located inside

3

the vessel. While in the warehouse, Cain struck his head on a light fixture.

Cain worked two more days until his regularly scheduled time off and then sought treatment.

The CAJUN EXPRESS began drilling operations in April or May 2001. Cain continued to work as a toolpusher until June 20, 2001.

In September 2001, Cain underwent a cervical discectomy and fusion. He was released to return to work in December 2001.

On January 14, 2002, as a pre-condition to his returning to work for Transocean, Cain began a "work hardening" program at The Fontana Center in Lafayette, Louisiana. He alleges that he suffered further injuries[2] while participating in the program. He has never returned to work for Transocean and alleges that he is now unable to work offshore.

## III. LAW AND ANALYSIS

### A. Jones Act

Any seaman who suffers an injury during the course of his employment may bring an action for damages under the Jones Act. 46 U.S.C. § 688. However, any person seeking protection as a seaman under the Jones Act must have an "'employment-related connection to a vessel in navigation.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (quoting *McDermott Int'l v. Wilander*, 498 U.S. 337, 355 (1991)). The Supreme Court has established a two-prong test to determine seaman status. First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Id.* Second, "a seaman must have a connection to

---

[2]The Court has previously addressed Cain's injury in more detail, *see* [Doc. No. 89], but limits its recitation of facts to those pertinent to its Ruling.

4

a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Id.* The seaman status inquiry is a mixed question of law and fact, which is normally reserved for the trier of fact. *See Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997); *see also Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983) (citations omitted) (Summary judgment on seaman status is "rarely proper" and even "marginal cases should go to the jury."). The issue of seaman status may be removed from the trier of fact if "the facts and law will reasonably support only one conclusion." *Chandris*, 515 U.S. at 373.

In this case, the Fifth Circuit has determined that, at the time of Cain's injury, the CAJUN EXPRESS was not a vessel in navigation. However, the Fifth Circuit left to this Court to determine whether Cain can meet the definition of a Jones Act seaman based on his overall employment. Transocean contends that he cannot and has moved for summary judgment.

As Transocean points out, the Fifth Circuit addressed the issue of seaman status based on overall employment in the *Hyman* case. In that case, the plaintiff, Bruce Hyman, was employed aboard the same rig as Cain, the CAJUN EXPRESS, as a subsea engineer responsible for building the subsea system on the rig. He was still working in this capacity when he was injured on October 25, 2000, over one month after Cain's injury. The Fifth Circuit rejected his claim of seaman status based on overall employment, stating:

> Hyman argues that even if the CAJUN EXPRESS was not a vessel at the time of his injury, he was nonetheless a "seaman" because his status as a subsea engineer did not change from the time he was hired in 1996, to the time of his injury in 2000. However, Hyman was assigned to the construction of the CAJUN EXPRESS in 1998, and he continued working in this capacity until the vessel was put [into] navigation for its intended purpose in 2001. **Regardless of Hyman's seaman status prior to his assignment to the CAJUN EXPRESS in 1998, he was not a seaman from 1998 until 2001 because the CAJUN EXPRESS was still under construction and not yet a vessel.** Transocean therefore was entitled to summary judgment on Hyman's Jones Act claim. Transocean was also entitled to summary

5

judgment on the claims for unseaworthiness and negligence, since CAJUN
EXPRESS was still under construction when Hyman was injured.

*Hyman v. Transocean Offshore U.S.A., Inc.*, 2006 WL 3497286, at *2, 207 Fed. Appx. 485, 487-
88 (5th Cir. 2006) (emphasis added).

Similarly, Cain argues that his job as toolpusher remained the same from the time of his

employment with Sonat in 1996 to the time of his injury. Cain attempts to distinguish himself

from Hyman because Hyman was assigned to the shipyard, i.e., to land, in Singapore while Cain

remained on the CAJUN EXPRESS at all times. Cain also points out that he was only assigned to

the CAJUN EXPRESS for a total of approximately fourteen months. However, the Court finds no

such distinction in the precedent.

The Supreme Court is clear that "a maritime employee must have a substantial

employment-related connection to a vessel *in navigation*." *Chandris*, 515 U.S. at 373. Even if a

maritime employee previously had seaman status, that status may change if his "basic assignment

changes." *Id.* at 372. Although Cain previously had a connection to the AMIRANTE when he

worked on the rig as a toolpusher, he was reassigned to the construction of the CAJUN EXPRESS.

While still classified as a toolpusher, he was no longer assisting in drilling for natural resources, he

was engaged in the construction and commissioning of the CAJUN EXPRESS, a rig which had

not obtained vessel status at the time of his injury. The example given by the Supreme Court in

*Chandris* on reassignment of duties is instructive:

For example, we can imagine situations in which someone who had worked for
years in an employer's shoreside headquarters is then reassigned to a ship in a
classic seaman's job that involves a regular and continuous, rather than intermittent,
commitment of the worker's labor to the function of a vessel. Such a person should
not be denied seaman status if injured shortly after the reassignment, just as
someone actually transferred to a desk job in the company's office and injured in
the hallway should not be entitled to claim seaman status on the basis of prior

6

service at sea. If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position.

*Id.*

In his new position, Cain was assigned to commissioning and construction duties and did not have a connection to a vessel in navigation. Therefore, he cannot assert seaman status.

Likewise, the Fleet Seaman Doctrine does not assist Cain. Cain was not assigned to a group of vessels under Transocean's common ownership or control, nor was he predominantly assigned to one vessel, but also performed duties on non-vessels or onshore. Cain was assigned indefinitely to one rig, the CAJUN EXPRESS, and performed all his duties on it. *See Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 376-77 (5th Cir. 2001) ("[W]hen a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control."); *Shade v. Great Lakes Dredge & Dock Co.*, 154 F.3d 143, 151 (3d Cir. 1998) ("We held that '[t]he Fleet Seaman Doctrine in our view applies to an employee, one who is predominantly assigned by his employer to a navigable vessel, but who occasionally is assigned by that same employer to non-navigable vessels. It would also apply to one who is assigned to a number of navigable vessels and spends some time on shore.'").

Finally, Cain cannot otherwise rely on his prior work history with Sonat to establish seaman status.[3] *See Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556-57 (1997) (An

---

[3]Transocean has also argued that Cain cannot meet his burden of showing seaman status at the time of his alleged injuries at The Fontana Center because he had not yet been assigned to any vessel. While the Court agrees with Transocean's assessment of the law, Cain did not respond to that argument, and the Court can only assume that he concedes the point.

"employee's prior work history with a particular employer may not affect the seaman inquiry if the employee was injured on a new assignment with the same employer, an assignment with different 'essential duties' from his previous ones." In fact, "the inquiry into the nature of the employee's duties for seaman-status purposes may concentrate on a narrower, not broader, period than the employee's entire course of employment with his current employer. There was no suggestion of a need to examine the nature of an employee's duties with prior employers."); *see also id.* at 558 ("Considering prior employments with independent employers in making the seaman-status inquiry would undermine 'the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act (and, perhaps more importantly for purposes of the employers' workers' compensation obligations, who will be covered by the LHWCA) before a particular work day begins.' . . . There would be no principled basis for limiting which prior employments are considered for determining seaman status.") (quoting *Chandris*, 515 U.S. at 363).

Because Cain cannot meet the requisite showing to establish seaman status, Transocean is entitled to summary judgment on his claims.

## B. Remaining Claims

Transocean also asserted a third party claim against The Fontana Center for the injuries allegedly suffered by Cain at that facility. This claim, of course, is derivative of Cain's claim against Transocean. Having now determined that Cain cannot establish seaman status in order to pursue his claim against Transocean, the Court, *sua sponte,* finds that Transocean's claim against The Fontana Center is properly dismissed as well.

## IV. CONCLUSION

For the foregoing reasons, Transocean's Motion for Summary Judgment [Doc. No. 104] is

GRANTED, and Cain's claims against Transocean are DISMISSED WITH PREJUDICE.

Transocean's claims Against Third Party Defendant The Fontana Center are also DISMISSED

WITH PREJUDICE as MOOT.

MONROE, LOUISIANA, this 2 4 day of September 2008.

ROBERT G. JAMES

UNITED STATES DISTRICT JUDGE